IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ERIKA FELTER AND
JONATHAN FELTER                                          PLAINTIFFS

VS.                        CIVIL ACTION NO. 5:11-cv-46(DCB)(RHW)

ANGIE BROWN, FORMER SHERIFF OF
ADAMS COUNTY, MISSISSIPPI; DARRYL
LONGINO, FORMER DEPUTY SHERIFF OF
ADAMS COUNTY, MISSISSIPPI; AND
ADAMS COUNTY, MISSISSIPPI                                 DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the Court on defendant Darryl Longino's Motion for Summary Judgment **(docket entry 26)**.  Having carefully considered the motion, to which no response has been filed by the plaintiffs, and the applicable law, as well as the record in this case, the Court finds as follows:

The Court previously raised, _sua sponte_, defendant Longino's assertion of qualified immunity as an affirmative defense in his Answer.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A stay order was entered in this case, allowing discovery to proceed solely on the issue of qualified immunity.

Following the completion of discovery, the Court ordered the plaintiffs to file a reply to defendant Longino's assertion of a

qualified immunity defense, see Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995).  The plaintiffs were cautioned that their reply must contain allegations of fact focusing on specific conduct of the defendant that they claim caused the alleged injury, and that they must support their claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of the defendant's conduct at the time of the alleged acts.  See id. at 1434.  When the plaintiffs failed to reply, the Court ordered the plaintiffs to show cause why Longino should not be dismissed on immunity grounds, and warned them that their failure to reply could result in dismissal of defendant Longino.  The plaintiffs also failed to respond to the show cause order, whereupon the Court granted Longino leave to renew his motion for qualified immunity.  Longino filed a motion for summary judgment based on qualified immunity, and the plaintiffs again failed to respond.

The party seeking summary judgment bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record evidence] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Paz, 555 F.3d at 391 (quoting Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th

Cir. 2000)).

Once the moving party meets its burden, the nonmoving party must then "come forward with specific facts showing a genuine factual issue for trial." Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist., 635 F.3d 685, 690 (5th Cir. 2011).  The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions, but instead must show that there is an actual controversy warranting trial.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(internal citations omitted).  As the 2010 amendments to Rule 56 make clear, a party asserting that a fact "is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials ...."  Fed.R.Civ.P. 56(c)(1)(A).

The plaintiffs have failed to respond to the defendants' motion for summary judgment.  The local rules of this Court require a response to a motion within fourteen days, L.U.C.R. 7(b)(4), which is not optional.  Blackard v. City of Southaven, 2012 WL 827192, *3 (N.D. Miss. March 9, 2012).  The plaintiffs, who are represented by counsel, neither responded to the motion nor moved for additional time to respond.

The Court notes that it may not grant summary judgment by

default, <u>i.e.</u>, merely because there is no opposition to the motion. <u>Hetzel v. Bethlehem Steel Corp.</u>, 50 F.3d 360, 362 n.3 (5th Cir. 1995).   However, the Court may accept as undisputed the movant's version of the facts and grant the motion where the movant has made a <u>prima</u> <u>facie</u> showing of its entitlement to summary judgment. <u>Eversley v. Mbank Dallas</u>, 843 F.2d 172, 174 (5th Cir. 1988); <u>Romberger v. United Transp. Union</u>, 930 F.Supp. 1131, 1132 (N.D. Miss. 1996).   In other words, the defendant must still meet his burden of establishing that no genuine issue of material fact exists concerning the plaintiffs' claims and that he is entitled to judgment as a matter of law.

According to the plaintiffs' Complaint, on September 19, 2009, "Erika Felter called the Adams County Sheriff's Department for assistance in euthanizing and disposing of a large, badly injured whitetail deer" near a roadway in Adams County, Mississippi. Complaint, ¶ 8.   The Complaint further alleges that defendant Longino arrived on the scene and attempted to kill the deer with his firearm, but neither of two shots to the animal's head was lethal.   <u>Id</u>. at ¶ 9.   Plaintiff Erika Felter continued to implore Longino to kill the animal, or allow her husband or brother to do so, but Longino refused.   <u>Id</u>. at ¶¶ 9-10.   Then, "[p]recipitously and without any justification, Deputy Longino handcuffed Erika Felter and took her against her will and without her consent to the Adams County Jail where she was incarcerated and charged with

4

'failure to obey an officer.' The charge was eventually dismissed." Id. at ¶ 11.

In his memorandum in support of the motion for summary judgment, Longino states that he was called to the scene by a dispatcher who warned him "that the call was based on a citizen's complaint and that the citizen that called was excited and upset about the matter." Memorandum, p. 2. The dispatcher also warned Longino that the other deputies were all on call and that he would not have any backup. Id. When Longino arrived on the scene, "Mrs. Felter was clearly upset about the situation and was adamant that Deputy Longino take action immediately." Id. at p. 3. While Longino was on his phone with dispatch, "Mrs. Felter repeatedly ordered Deputy Longino to get off the phone and demanded he take immediate action." Id. When Longino fired his first non-lethal shot, "Mrs. Felter demanded Longino shoot the deer again and continued to harass him until he fired again." Id. After the second shot, which was also non-lethal, "Felter became very agitated and upset and badgered Longino to shoot the animal again." Id.

Longino tried to calm Mrs. Felter down but was unable to do so. Id. at pp. 3-4. She moved toward him, demanding that he shoot the deer. Id. at p. 4. At that point, Mrs. Felter's brother arrived at the scene with a high powered rifle. Longino saw the brother, Michael Bumgarner, approach with a .30-06 rifle. "While

Longino was dealing with Felter, who continued her hysterics, he heard someone cycle a round into the high-powered rifle and saw either Felter's brother or husband approach the animal and aim the rifle at it." Id. Longino immediately told the male not to shoot the animal because the high-powered rifle would not be safe at that range. Id. The male with the rifle obeyed Deputy Longino's command not to shoot. Id.

"At this point, given that Deputy Longino was outnumbered, one of the citizens had a high powered rifle in his possession, and Mrs. Felter seemed out of control, Longino became very concerned for his safety. Deputy Longino believed that Mrs. Felter was becoming a problem and a threat and, as such, he advised her to leave the scene." Id. Bumgarner's deposition reveals that he too recognized that his sister was out of control, and he told his brother-in-law to get her into the car. Id., citing Bumgarner Depo. at 32-33. Bumgarner also stated that he believed the situation was going to "break [his sister] down" and he told her to get into the car to "separate" herself from the situation. Id., citing Bumgarner Depo. at 33-36. Mrs. Felter refused to leave the scene or to obey Longino. Id. at p. 5. Mrs. Felter told Longino he would have to arrest her, then turned around and placed her hands behind her back, at which point Longino handcuffed her and arrested her for failure to obey his order to leave the scene. Id. Deputy Longino then placed Mrs. Felter in his vehicle and took her

to the Adams County Jail for processing. <u>Id</u>. Neither Mrs.
Felter's brother nor her husband were arrested. <u>Id</u>.

Plaintiffs suing a defendant in his individual capacity
pursuant to Section 1983 must allege specific conduct giving rise
to the constitutional violation. <u>Oliver v. Scott</u>, 276 F.3d 736,
740 (5th Cir. 2002). When a defendant invokes qualified immunity,
the burden is on the plaintiffs to demonstrate the inapplicability
of the defense. <u>McClendon v. City of Columbia</u>, 305 F.3d 314, 323
(5th Cir. 2002).

The plaintiffs' Complaint asserts that "[t]he arrest and
imprisonment of Erika Felter was illegal, wrongful and false for
the reason that the arrest was not based upon a valid warrant and
was without probable cause," Complaint, ¶ 12, and that the "false
or wrongful arrest and imprisonment ... deprived Erika Felter of
her rights, privileges and immunities secured by the United States
Constitution ...." Complaint, ¶ 17. Specifically, the plaintiffs
refer to "rights ... secure[d] to the Plaintiff Erika Felter by the
provisions of unreasonable seizure of the person and of the due
process clause of the Fourth and Fourteenth Amendments of the
Constitution of the United States and by 42 USC Section 1983
barring illegal arrests." Complaint, ¶ 24.

Law enforcement officials, "like other public officials acting
within the scope of their official duties, are shielded from claims
of civil liability, including § 1983 claims, by qualified

7

immunity." <u>Morris v. Dillard Dept. Stores, Inc.</u>, 277 F.3d 743, 753 (5th Cir. 2001).  A law enforcement officer is entitled to the cloak of qualified immunity "unless it is shown that, at the time of the incident, he violated a clearly established constitutional right." <u>Mangieri v. Clifton</u>, 29 F.3d 1012 (5th Cir. 1994).  Significantly, qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).

In assessing a claim of qualified immunity, courts apply a two part analysis.  The threshold question is "whether Plaintiff's allegations establish a constitutional violation." <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002).  If "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." <u>Saucier v. Katz</u>, 533 U.S. 194 (2001); <u>see</u> <u>also</u> <u>Pearson v. Callahan</u>, 555 U.S. 223, 225 (2009)(courts may address these prongs in either order).  However, "if a violation could be made out, the next sequential step is to ask whether the right was clearly established." <u>Saucier</u>, 533 U.S. at 201.  It is important to note that the right that the "official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Anderson v. Creighton</u>, 483 U.S. 635,

8

640 (1987).  The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." Saucier, 533 U.S. at 202.  Finally, it is worth noting that "[w]hen a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002).

While the Constitution does not guarantee that only the guilty will be arrested, the Fourth Amendment does prohibit unreasonable searches and seizures.  See Baker v. McCollan, 443 U.S. 137, 145 (1979); Sorenson v. Ferrie, 134 F.3d 325, 328 (5th Cir. 1998). Generally, a seizure without probable cause or warrant is a violation of the Fourth Amendment.  See United States v. Jones, 234 F.3d 234, 239 (5th Cir. 2000).  Thus, whether an arrest is legal hinges on the existence of probable cause.  Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.  United States v. Levine, 80 F.3d 129, 132 (5th Cir. 1996).  If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.  Atwater v. City of Lago Vista, 532 U.S. 318,

354 (2001); see also Lockett v. New Orleans City, 607 F.3d 992, 998 (5th Cir. 2010)(arrest for exceeding speed limit).

Here, there can be no doubt that Deputy Longino had probable cause to arrest Mrs. Felter on a misdemeanor charge of failure to obey. See Miss. Code Ann. § 97-35-7. Deputy Longino repeatedly commanded her to step back from the situation and, if necessary, leave the scene. Longino Affidavit, ¶¶ 10-14. Nevertheless, Mrs. Felter remained on the scene, very upset and continually interfering with Longino as he determined how to handle the situation. Id. The Plaintiff admitted in her deposition that she was upset and agitated; her brother and her husband both confirmed this fact. E. Felter Depo. pp. 40, 42; J. Felter Depo. pp. 21-23; Bumgarner Depo. pp. 30-33. Deputy Longino repeatedly told the plaintiff to calm down or he would have to arrest her, but she refused to calm down and even told him to arrest her. Longino Aff. ¶ 13; E. Felter Depo. pp. 45, 48-49; J. Felter Depo. pp. 22-23. In summary, Felter refused to obey Deputy Longino's demand that she leave the scene, and this refusal amounted to a misdemeanor committed in his presence. This is clearly sufficient probable cause for Deputy Longino to arrest Mrs. Felter. See Atwater, 532 U.S. at 354.

Furthermore, even if Mrs. Felter could demonstrate that she suffered a constitutional violation, Deputy Longino would still be entitled to qualified immunity under the facts of this case.

Longino's decision to arrest Mrs. Felter was objectively reasonable and, as such, entitles him to qualified immunity.  As previously noted, the qualified immunity test has two prongs, the second of which requires that the right violated be "clearly established." Saucier, 533 U.S. at 201.  The appropriate test for whether or not a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." Id. at 202.  An officer's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight. Graham v. Connor, 490 U.S. 386, 396-97 (1989).  "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994).

Here, Deputy Longino believed that he had probable cause to arrest Mrs. Felter based upon her failure to obey his command. Longino was in a remote stretch of road that was not well-lit, without backup, outnumbered, and one of the individuals was in possession of a high powered rifle.  Longino Aff. ¶¶ 4-14. Furthermore, Mrs. Felter was was so out of control over the situation that Longino believed she might be under the influence of drugs or alcohol. Id. at ¶¶ 6-7.  Mrs. Felter was very upset and Longino believed, under the circumstances, that she was becoming a problem.  Bumgarner Depo. pp. 31-34; Longino Aff. ¶¶ 12-14.  Mrs. Felter's actions were such that Deputy Longino reasonably arrested

11

her for failure to obey.  It cannot be said that "no reasonable officer could have believed" arresting Mrs. Felter, under the given circumstances, was proper.  Thus, even if the arrest amounted to a constitutional violation, Deputy Longino is entitled to qualified immunity as his conduct was objectively reasonable.

The plaintiffs also contend that Erika Felter suffered a violation of her rights when she was unlawfully detained or imprisoned following her arrest.  Complaint, ¶ 24.  While a claim for harm derived from being seized focuses on the Fourth Amendment, a claim for harm derived from being wrongfully detained/falsely imprisoned focuses on the Fourteenth Amendment.  See Thomas v. Kippermann, 846 F.2d 1009, 1011 (5th Cir. 1988).  To establish a constitutional violation for "false imprisonment," a plaintiff must show that the defendant lacked probable cause to arrest him. Haggerty v. Texas So. Univ., 391 F.3d 653, 655 (5th Cir. 2004).

Erika Felter's claim for false imprisonment fails because she was clearly detained based upon probable cause.  As explained above, there was probable cause to arrest Mrs. Felter based on her actions in violation of Mississippi Code § 97-35-7.  Because there was clearly probable cause to detain the plaintiff, her false imprisonment claim also fails.

As for plaintiff Jonathan Felter, he admitted in his deposition that he was never arrested in connection with the subject incident.  J. Felter Depo. p. 25.  In Coon v. Ledbetter,

780 F.2d 1158 (5th Cir. 1986), the Fifth Circuit explained that a party who asserts a claim for a deprivation of his civil rights must have personally had such rights violated.  Thus, a person cannot recover on a claim that is dependent on or derivative of another person's civil rights violation claim.  Id. at 1160-61; see also Barker v. Halliburton Co., 645 F.3d 297, 300 (5th Cir. 2011). Because Jonathan Felter was neither arrested nor detained, and asserts no other deprivation of his civil rights, his claim under Section 1983 must be dismissed.

The Court notes that defendant Longino moves for summary judgment on the federal claims against him and does not address the state law claims contained in Counts II and III of the Complaint. Accordingly,

IT IS HEREBY ORDERED that defendant Darryl Longino's Motion for Summary Judgment premised on qualified immunity grounds **(docket entry 26)** is GRANTED;

FURTHER ORDERED that all federal claims against defendant Darryl Longino in his individual capacity are dismissed with prejudice.

SO ORDERED, this the 2nd day of October, 2013.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE